WALTER P. HARDY & another, executors, *vs.* ANNIE S. W. MARTIN & another.

Essex. November 5, 1908. — January 7, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Evidence*, Remoteness. *Probate Court*, Appeal. *Practice, Civil*, Conduct of trial.

It is within the discretion of a single justice, before whom is being tried on appeal from the Probate Court an issue as to the sanity of a testator at the time of the execution of an alleged will, to designate a limited period of time, evidence as to acts and events within which bearing on the issue would be admitted and other evidence excluded as remote; and it is not an unreasonable exercise of such discretion, at the trial of such an issue regarding a will executed by a woman sixty-two years of age, whom those objecting to the proof of the will contended was suffering from congenital insanity, to set as such limit a time six years before the time when the will was executed.

APPEAL from a decree of the Probate Court for the county of Essex allowing the will of Sarah E. Wells, late of George-

town, who died on May 17, 1907, at the age of sixty-three years.

Issues were framed in this court as to sanity of the testatrix at the time of the execution of the will and as to whether its execution was procured by fraud or undue influence, and were tried before *Sheldon*, J., and determined in favor of the petitioners. The appellants alleged exceptions to certain rulings of the presiding justice regarding the exclusion of evidence described in the opinion.

*V. C. Lawrence*, (*D. J. O'Connell* with him,) for the appellants.

*J. P. Sweeney*, for the appellees.

HAMMOND, J. The will was executed October 20, 1906, and the testatrix died May 17, 1907. After formal proof of the will counsel for the appellants in his opening stated " that it was the intention of the appellants to show that the said Sarah E. Wells was insane at the time of the making of the alleged will, and that she had congenital insanity, and that it was their intention to show her congenital insane mind by a long series of acts and conduct on the part of the testatrix beginning with her early childhood and continuing up to within a few years of her decease, such as stealing from stores, relatives and others, cruel and abusive treatment of her mother, and declarations and acts showing a morbid and abnormal love for money, these acts being so numerous and of such a character as to establish the fact of her being a kleptomaniac; that many times previous to the date of her mother's death, she deprived her mother of the necessary comforts of life; that she abused her physically and that previous to 1900 she committed many acts and made many declarations showing a lack of moral sense and obligation, and that she was unbalanced and insane on the subject of money, all indicating congenital unsoundness of mind."

" After counsel for the appellants finished his opening, . . . the presiding justice said that in view of the statements made by counsel for the appellants' . . . he should rule that the appellants might put in evidence as to insanity on the part of the ancestors of the testatrix, but with reference to her own conduct he did not think he should allow counsel for the appellants to open all her, the alleged testatrix's, life; that the question of her own

unsoundness of mind at the time of the execution of this will, and her conduct or indications of sanity or insanity within a reasonable period before that would be competent, but that he should impose some limit of time, and he did not think that the matters that took place between her and her deceased father in 1894 should be gone into. That as the will in question was made in 1906, he thought if he allowed both sides on any question as to the conduct of the testatrix to go back to the year 1900, he was dealing more liberally than in strictness he should."

Thereafter in the course of the trial the presiding justice ruled in accordance with his intention and excluded all evidence before 1900. It is now contended by the appellants that evidence offered by them having a very material bearing upon the question of congenital insanity was wrongfully excluded. An examination of the record shows that much of this evidence was entirely incompetent, and also that much of it, even if it related to a point subsequent to 1900, was of such a character as that it might properly have been excluded at the discretion of the presiding justice, upon the ground that it involved a trial of collateral facts having too remote a causal relation to the issues on trial.

But without reference to these considerations we think that the exceptions must be overruled. Obviously there must be some limit of time on an inquiry into the mental condition of a testator, and the rule is stated by Allen, J., in *Howes* v. *Colburn*, 165 Mass. 385, 387. In that case the single justice limited the introduction of evidence of specific acts of unsoundness of mind on the part of the testator to a period "from about eight years before the date of the will to about two and a half years after its date," and the following remarks of Allen, J., in that case are peculiarly applicable to this: "This was within the power of the court to do, and its power in this respect was not taken away by the fact that expert witnesses for the contestants thought a better judgment as to the testator's soundness of mind could be formed if these limits were extended. It has been declared heretofore that such testimony must be sufficiently near in point of time to aid in determining the testator's condition at the time of making the will, and that this is a matter for

the court to decide.   *White* v. *Graves*, 107 Mass. 325.   *Shailer* v. *Bumstead*, 99 Mass. 112, 130.   *Commonwealth* v. *Pomeroy*, 117 Mass. 143, 148.   *Lane* v. *Moore*, 151 Mass. 87, 90.   *Dumangue* v. *Daniels*, 154 Mass. 483, 486.   In the present case, the trial was a long one, the period fixed appears to have been sufficiently liberal, and but for the limitation put upon the introduction of evidence the trial might have consumed an unreasonable length of time.   No exception can be sustained to the exclusion of the testimony relating to times outside of the limits so fixed."   See also *Davis* v. *Davis*, 123 Mass. 590.

*Exceptions overruled.*