IN RE ESTATE OF SETH F. WINCH.
STELLA DICKINSON ET AL., APPELLEES, V. ELVIRA M.
ALDRICH ET AL., APPELLANTS.

FILED APRIL 24, 1909.   No. 15,972.

1. Wills: PROBATE: MENTAL CAPACITY: EVIDENCE. In a proceeding to probate a will where insanity is relied on as a defense, the capacity of a testator to make the will is to be decided by the state of his mind at the time it was executed; and, to shed light on that question, evidence showing the condition of the testator's mind long prior, closely approaching, and shortly subsequent to the execution of the will is competent, but such evidence should be admitted for no other purpose.

2. ———: MENTAL CAPACITY: DISCRETION OF COURT. On the trial of the issue of a testator's sanity, it is within the discretion of the judge to fix the limit of time after the making of the will within which evidence tending to show specific acts of unsoundness of mind on the part of the testator should be confined, and to exclude testimony outside of those limits.

3. ———: ———: ———. Record and bill of exceptions examined, and held that, in limiting the period of inquiry in this case, there was no abuse of judicial discretion.

4. ———: SENILE DEMENTIA. Where, in cases of senile insanity, the evidence fails to show that before or at the time of the execution of the will the testator was afflicted with that disease, the inquiry should be conducted according to the general rules applicable to other forms of insanity.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*McGilton & Gaines, T. J. Nolan* and *E. E. Thomas,* for appellants.

*L. D. Holmes* and *J. L. Kaley, contra.*

BARNES, J.

This action involves the validity of the will of one Seth F. Winch, which was executed in November, 1891. Probate of the will was resisted by the appellants, who are

the heirs at law of the testator, upon the ground that at the time of its execution Winch was insane, and was therefore incapable of making a valid will. The first trial in the district court resulted in a verdict and judgment for the contestants, which on appeal to this court was reversed and the cause was remanded for a new trial, 79 Neb. 198. A second trial resulted in a verdict and judgment for the proponents, and to reverse that judgment the contestants have appealed.

It was, and is, the theory of the contestants that Seth F. Winch at the time he made the will in question was afflicted with a mental disease known as senile dementia, and was thereby rendered incompetent to make a will, and ·to that issue the entire evidence was addressed. It appears that at the commencement of the trial the district court announced the rule that inquiry as to the mental condition and habits of the testator should not be confined to any particular time before the execution of the will, but would be limited to a period of two years after that date. No complaint was made of this order at the time it was announced; but, as the trial progressed, the contestants offered evidence of the mental condition, habits and conduct of the testator during the years of 1894, 1895 and 1896, which was excluded, and contestants excepted. For the rejection of this evidence, it is now contended that the judgment of the trial court should be reversed. The weight of authority seems to sustain the doctrine that in will contests the trial court may, in the exercise of its discretionary power, limit the inquiry to a comparatively short time after the execution of the will. *Howes v. Colburn,* 165 Mass. 385; *White v. Graves,* 107 Mass. 325; *Shailer v. Bumstead,* 99 Mass. 112; *Commonwealth v. Pomeroy,* 117 Mass. 143; *Lane v. Moore,* 151 Mass. 87; *Dumangue v. Daniels,* 154 Mass. 483. It follows that the only question for us to determine is whether, under the circumstances of this case, the district court was guilty of an abuse of its discretionary power which operated to the prejudice of the contestants.

It appears from the bill of exceptions that the appellants offered to show that Winch had been brought before the insanity commission of Douglas county in 1896, and, as a result of an examination, had been declared insane; that the contestants offered to show by a witness of the name of Moore, certain acts and conduct of Mr. Winch during the years 1894 and 1895, and the court directed the attention of counsel to the rule, which was stated as follows: "We are limiting the testimony to not later than November, 1893. Matters occurring after that you will omit from your statements." It further appears that the contestants sought to show that the deceased in 1895 had become violently insane, and threatened à Mrs. Steen with a butcher knife. Again, one Doctor Tilden was called by contestants, who attempted to show by him that, as a member of the insanity commission, he had examined Winch in 1896, and at that time he was afflicted with the disease known as senile dementia, and as a result thereof he was insane. These offers were excluded, and the contestants excepted.

The rule is well established that in contests of this kind the competency of a testator to make a will is to be decided by the state of his mind at the time the will was made; and, to shed light on its condition then, evidence showing the condition of his mind long prior to, closely approaching, and shortly subsequent to its execution is competent, but such evidence should be admitted for no other purpose. *Von DeVeld v. Judy*, 143 Mo. 348. In *Kinne v. Kinne*, 9 Conn. *102, it was said: "The question of testamentary capacity relates exclusively to the time when the will was made; and though evidence of the testator's conduct before and after that time is admitted, it is received only to show his state of mind *at* that time." In *Terry v. Buffington*, 11 Ga. 337, it was said: "The general principle will not be controverted that the state of mental capacity is to be determined by the condition of the testator's mind at the time of his executing or acknowledging the will. For, notwithstanding his incapacity at

a prior or subsequent time should be proved, it does not necessarily follow that he was incompetent when the will was made, especially if the incapacity be subsequent to the execution of the instrument." The contestants do not attempt to controvert this rule, but insist that it has no application to the case at bar. It is argued that where insanity is the result of *senile dementia* which is once conclusively shown to exist, the inquiry as to his acts and mental condition should be extended to the time of the death of the testator. To support this argument, our attention is directed to the case of *Bever v. Spangler,* 93 Ia. 576. In that case it was held that, *senile dementia* being a progressive disease, it was not error to allow the inquiry as to the condition of the testator's mind to cover a period of six years after the execution of the will. That decision, however, does not hold that it would be error to limit the inquiry to a period of two years after the date of the will. We find that in treating of senile insanity one of our leading text-writers makes use of the following language: "Extreme old age, with its attendant physical and intellectual weakness, does not of itself incapacitate the testator, and therefore it raises no presumption of his not having a disposing mind. It follows that in this kind of insanity, as in all others, the exact subject of inquiry is the state of mind at the time of signing and executing the will." 1 Wharton and Stille, Medical Jurisprudence, sec. 990. The text above quoted seems to be fortified by 28 Am. & Eng. Ency. Law (2d ed.), p. 86, *Browne v. Molliston,* 3 Whart. (Pa.) *129, and 1 Underhill, Law of Wills, sec. 117. In *Thompson v. Kyner,* 65 Pa. St. 368, it was said: "An abnormal condition of mind is never presumed when a testator makes a will, unless a previous aberration be shown of such a nature as may admit of a presumption of recurring unsoundness at any time." The weight of authority seems to be that in cases of senile dementia there is no uniform rule by which to determine the testamentary capacity of the testator. 1 Wharton and Stille, Medical Jurisprudence, sec. 994. In such

cases the question whether the testator has a mental disease that affects his or her capacity is one of fact to be determined by the jury according to the rules applicable to other forms of insanity. As we read the evidence in this case the contestants failed to show that, at any time before or at the date of the execution of the will, the testator was afflicted with senile dementia. While it is shown that he was eccentric, and at times his conduct and habits were somewhat peculiar, yet it seems reasonably clear at the time the will was executed he was a shrewd, successful business man; that he knew what property he had; that he was aware of its condition and extent; that he remembered all of the members of his family, and the natural objects of his bounty, and was thoroughly aware of the disposition he proposed to make of his estate. This being so, the fact that at a much later date he became a senile dement would not of itself invalidate his will. Again, it appears in *Howes v. Colburn,* 165 Mass. 385, that the court limited the introduction of evidence tending to show specific acts of unsoundness of mind on the part of the testator to a period from eight years before the date of the will to two and one-half years after its date. And it was held that this was a matter entirely within the discretion of the trial judge. A careful examination of the record satisfies us that this case is not within the exception contended for by counsel, but should be determined according to the general rules above stated, and that the district court was not guilty of an abuse of discretion in limiting the period of inquiry to two years after the execution of the will.

Finally, it appears from the bill of exceptions that all of the evidence excluded as too remote was embraced in the hypothetical questions propounded by counsel for contestants to their expert witnesses, who were allowed to state that in their opinions the testator was of unsound mind when the will was executed. Therefore it is difficult to see how the exclusion of specific acts of the testator occurring during the years of 1894, 1895 and 1896

could have had any prejudicial effect upon the rights of the contestants.

The record does not disclose any prejudicial error, and the judgment of the district court is therefore

AFFIRMED.

FAWCETT, J., not sitting.

REESE, C. J.

I agree to the result reached in this case, but prefer to place my assent upon the ground that the order of the court was made at an early stage of the trial, and to which no objection was made and no exceptions taken. I think that, if it was the desire of contestants to have that order reviewed, they should have excepted to the ruling and order of the court, and thus preserved their rights. Offering no objections and taking no exceptions to the order must be taken as consenting thereto, and a waiver of any future right to question it or assign the subsequent rulings based thereon as error.