# Odom *v.* The State.

## *Murder.*

(Decided Dec. 21, 1911. 56 South. 915.)

1. *Jury; Competency; Opinion.*—Where on his voir fire, a venireman stated that he did not believe in the sanity of the accused, that he did not believe he was sane, and that his opinion as to his guilt or innocence was fixed, the court properly permitted the state to challenge him for cause.

2. *Insanity; Evidence; Experts; Competency.*—The general rule being that only persons licensed to practice medicine and the profession can testify as experts on the question of sanity, a lay witness who had handled a great many insane persons, had observed and studied them, in the course of their transfer by him between different points in the state, and who had later read medical books on the subject. was not qualified as an expert to testify on the question of sanity.

2. *Same; Non Expert; Qualification.*—To render a non expert qualified to testify as to anothers' sanity, the witness must be shown to have had an acquaintance with the subject sufficiently intimate and long to enable him to form a reasonably accurate and trustworthy opinion as to the mental condition of the subject.

4. *Same.*—Where a witness testified that he had known the accused for fifteen or twenty years, having lived in the neighborhood, four or five miles from accused, and that while he had done some little business with accused, he very seldom had anything to do with him, and that probably had not seen him for two years before the homicide, had had one interview with him while he was imprisoned before the first trial, and visited him six or seven times,

[Odom v. The State.]

and interviewed him about half an hour each time between his first and second trial, the court did not abuse the discretion in refusing to allow the witness to give his opinion as to the sanity of the accused, on the ground that the acquaintanceship was not sufficient.

5. *Same; Appearance of Accused.*—Where the issue was insanity vel non, a question asked of a non expert whether the appearance of the accused when the witness examined him was that of a sane or insane man, was improper, the witness being entitled to testify only that the accused appeared to be melancholy and seemed wild and haggard.

6. *Evidence; Non Expert; Competency.*—Whether the qualifications of a non expert witness to testify as to the sanity of a person are sufficient, is a question to be determined by the trial court in the exercise of its discretion, and the determination thereof will not be reviewed on appeal, except for palpable abuse.

7. *Insanity; Previous Existence; Presumption.*—While insanity at a particular time, if shown to be habitual and permanent, is prima facie presumed as a matter of law to exist at a future time, and from its existence alone at a later time, a presumption of fact may arise of its existence at a prior time, yet the probative value of subsequent insanity to show insanity at a prior time depends on the nature and degree of the insanity shown, and its nearness or remoteness in point of time to the act under consideration.

8. *Homicide; Mental Capacity; Evidence.*—Where the defendant was being tried for murder about fifteen months after the commission of the crime, the question to a non expert calling for his opinion as to whether the defendant is sane or insane was improper.

9. *Same; Insanity; Evidence.*—Where a considerable time has elapsed since the commission of the homicide the admission or rejection of evidence of subsequent insanity is within the judicial discretion of the trial court.

10. *Same; Instructions.*—Where the defendant is guilty of murder as charged, on the undisputed evidence, unless he sustains his plea of not guilty by reason of insanity, charges appropriate only to the issues made by the defendant's plea of not guilty were properly refused.

APPEAL from Mobile City Court.

Heard before Hon. O. J. SEMMES.

Lawrence Odom was convicted of murder in the first degree and he appeals. Affirmed.

See also 172 Ala. 383, 55 South. 280.

WEBB & McALPINE, for appellant. The court erred in not permitting the witness to testify as an expert.—54 Cal. 509; 64 Vt. 233; 35 Vt. 389; 39 L. R. A. 317; 12 Mich. 36; 127 Mass. 4421; 111 U. S. 612; Wigmore

on Evid. sec. 568. The court erred in excluding the evidence of the witness Humphries, that the defendant appeared to be insane.—*Milton v. Rowland,* 11 Ala. 732; *Bennett v. Fail,* 26 Ala. 610; *Wilkinson v. Mosely,* 30 Ala. 562; *Blackman v. Johnson,* 35 Ala. 255; *Stone v. Watson,* 37 Ala. 288; *Dominick v. Randolph,* 124 Ala. 557. The court erred in refusing charge 7.

ROBERT C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. As to whether a witness is an expert or not is addressed to the sound discretion of the court and will not be revised.—*Braham v. State,* 143 Ala. 28; *Parrish v. State,* 139 Ala. 16; *Ford v. State,* 71 Ala. 385; *Tullis v. Kidd,* 12 Ala. 648. Under the above authorities, it must be held that the witness was not an expert and that he had not had sufficient opportunity of observation to give testimony as to the mental attitude of the defendant. Charge 7 was properly refused.—*Maxwell v. The State,* 89 Ala. 150; *Parish v. State, supra.*

SOMERVILLE, J.—The appellant was convicted of murder in the first degree, and sentenced to death. The evidence showed without dispute that he was guilty of murder in the first degree, unless he was mentally irresponsible, as pleaded by him.

In impaneling the jury for appellant's trial in the court below, one of the veniremen stated on his voir dire: "I have never believed in the sanity of the man (the defendant). I don't believe the man is a sane man." He further stated that his opinion as to the guilt or innocence of the defendant was "fixed." The trial court properly ruled that this venireman was subject to challenge by the State for cause, and his rejection from the panel cannot be complained of by appellant.

On a former appeal in this cause, it was ruled that appellant's witness Humphrey could not testify as an expert on insanity, his only qualification being that he had handled a great many insane persons, and had observed and studied them in the course of their transfer by him from Mobile to Tuscaloosa and other points.— *Odom v. State,* 172 Ala. 383, 55 South. 820. On the second trial, in addition to this qualification, this witness stated that he had "lately read medical works on the subject, and studied in that way." This did not transform him into an expert. As a general rule, only medical men—that is, persons licensed by law to practice the profession of medicine—can testify as experts on the question of insanity; and the propriety of this general limitation is too patent to permit of discussion.— See *Tullis v. Kidd,* 12 Ala. 648; 12 A. & E. Ency. Law, 452.

An exception may perhaps be recognized where the witness has made a protracted and systematic study of mental science and disease under approved conditions, as *in re Toomes,* 54 Cal. 509, 35 Am. Rep. 83. In any case, the competency of an alleged expert is a question addressed to the sound discretion of the trial judge.— *Parrish v. State,* 139 Ala. 16, 36 South. 1012. The witness Humphrey, therefore, could testify to his opinion as to the defendant's insanity, if at all, as a lay witness.

The rules prescribing the qualifications required of a lay witness offered for this purpose have been frequently stated by this court.—*Dominick v. Randolph,* 124 Ala. 557, 27 South. 481; *Ford v. State,* 71 Ala. 385; *Parrish v. State,* 139 Ala. 16, 36 South. 1012; *Braham v. State,* 143 Ala. 28, 38 South, 919, and cases therein cited. Having regard to the type of insanity exhibited, and the more or less obvious and intelligible character of its symptoms, the witness must be shown to have had

an acquaintance with the subject of inquiry sufficiently intimate and long continued to enable him to form a reasonably accurate and trustworthy opinion as to the mental condition of such subject.

Whether the qualifications of the witness are sufficient is, of course, a question to be determined by the trial court; and the very nature of the test requires that its determination in particular cases be confided to the discretion of the trial court, which will not be revised on appeal except for very palpable abuse.—*Ford v. State; Parrish v. State; Braham v. State, supra.*

This witness Humphrey states that he had known and known of appellant for 15 or 20 years, and lived in the neighborhood 4 or 5 miles away from him, that he did not know how many times he had seen him, had done a little business with him, but very seldom had anything to do with him, and probably had not seen him for 2 years before the homicide. On the former appeal it was ruled that such an acquaintance, coupled with a single interview with appellant after he was imprisoned for this crime, was not sufficient to render the witness competent to testify that in his opinion appellant was insane.—*Odom v. State, supra.* Since he testified on the first trial the witness, according to his present testimony, has visited and interviewed appellant while in prison six or seven times, seeing him about half an hour on each occasion. An acquaintance so restricted in its character, and so artificial in its probable results, cannot be regarded as satisfactory. And certainly the rejection of the witness' opinion was no abuse of the discretion of the trial court.

There is another aspect, also, in which the opinion of the witness might have been properly rejected. The question put to him was: "In your opinion, is Odom sane or insane?" It was thus directed to the mental

condition of the defendant at a time about 15 months after the commission of the homicide.

Although the issue was specifically as to the mental condition of the defendant at the time of the homicide, the inquiry was not limited to that time alone.

And it is a sound general rule that insanity at any particular time, if shown to be habitual and permanent in its nature, is prim'a facie presumed as a matter of law to exist at any future time; and alone from its existence at a later time a presumption of fact may arise of its existence at a given prior time.—*Murphree v. Senn,* 107 Ala. 424, 18 South. 264; *McAllister, v. State,* 17 Ala. 434, 52 Am. Dec. 180. But in the latter case it is clear that the probative value of subsequent insanity to show insanity at any prior time will depend upon (1) the nature and degree of the insanity shown, and (2) its nearness or remoteness in point of time to the act under consideration.—*In re Winch,* 84 Neb. 251, 121 N. W. 116, 18 Am. & Eng. Ann. Cas. 903, and note, 905, collecting many cases; *Waterman v. Whitney,* 11 N. Y. 170, 62 Am. Dec. 71; *Grant v. Thompson,* 4 Conn. 203, 10 Am. Dec. 119; *Dickinson v. Barber,* 9 Mass. 225, 6 Am. Dec. 58; *Terry v. Buffington,* 11 Ga. 337, 56 Am. Dec. 423; *Shailer v. Bumstead,* 99 Mass. 112; *Dowie v. Driscoll,* 203 Ill. 480, 68 N. E. 56; *LaBau v. Vanderbilt,* 3 Redf. Sur. (N. Y.) 390, 412.

Where considerable time has elapsed, the admission or rejection of such evidence and the general range of the inquiry must be left to the sound discretion of the trial court, since it can best determine such matters from its more intimate view and understanding of the whole evidence before it.—*In re Winch,* 84 Neb. 251, 121 N. W. 116; 18 Am. & Eng. Ann. Cas. 903; *Herster v. Herster,* 122 Pa. 239, 16 Atl. 342, 9 Am. St. Rep. 95; *Lane v. Moore,* vⴏⴄ *Mass.* 87, 23 N. E. 828, 21 Am. St.

Rep. 430; *Haines v. Hayden,* 95 Mich. 332, 54 N. W. 911, 36 Am. St. Rep. 566. In the present case, even conceding the general qualifications of the witness, we discover no abuse of the trial court's discretion in rejecting opinion evidence of the defendant's insanity at the date of the second trial, more than a year after the commission of the homicide.

Following the question calling for his opinion as to the defendant's insanity, defendant's counsel asked the witness, "When you observed him, was his (defendant's) appearance that of a sane or of an insane man?" The exclusion of this question by the trial court was not reversible error. It is true, as said *Bennett v. Fail,* 26 Ala. 611, that the apparent condition of the physical system, as to health or sickness, is a matter of fact, to which a witness may testify. But the apparent condition of the mental system as to sanity or insanity is not a matter of fact merely, and involves essentially the inference and opinion of the witness. The witness actually testified to the appearance of the defendant, saying that he was inclined to be melancholy, and seemed wild and haggard; and this was as far as he could rightfully go. It may be that there is an "insane look" habitual to insane persons, the presence of which in particular cases is capable of discernment and possessed of probative value. If so, it is a matter for experts, and not for ordinary witnesses.

Again, the question was directed to some indefinite time or times long after the act charged, and, under the principles heretofore stated, the admission or rejection of the opinion, though otherwise available, was in the sound discretion of the trial judge.

The three written charges refused to the defendant are but duplicates of the three written charges given at his request, and there was no error in their rejection.

[Andrews v. The State.]

Moreover, the refused charges were appropriate only to the issue made by defendant's plea of "not guilty." And, since on the undisputed evidence he was guilty of murder as charged unless he showed insanity under his plea of "not guilty by reason of insanity," these charges were well refused for this reason.

There being no error in the record, the judgment of conviction must be affirmed.

Affirmed.

All the Justices concur, except DOWDELL, C. J., not sitting.