## FERGUSON SEED FARMS, Inc., v. McMILLAN et al. (No. 2831.)

Court of Civil Appeals of Texas. Amarillo.
May 18, 1927.

Rehearing Denied June 15, 1927.

1. Appeal and error ⬉912—Reviewing court will presume trial court ruled correctly on motion for change of venue, where evidence not in record (Rev. St. 1925, art. 2170).

The Court of Civil Appeals will presume that the trial court ruled correctly in overruling a motion made under Rev. St. 1925, art. 2170, for change of venue, on the ground that by reason of a combination of influential persons the defendant could not obtain a fair trial, where the evidence is not in the record.

2. Venue ⬉58—Application for change of venue for "other-sufficient cause" should state facts relied on (Rev. St. 1925, art. 2170, subd. 3).

An application for change of venue for "other sufficient cause," under Rev. St. 1925, art. 2170, subd. 3, should state the facts relied on.

3. Corporations ⬉503(3)—Allegation of corporation, sole defendant, for change of venue because of local prejudice against president, is referable to third subdivision of statute (Rev. St. 1925, art. 2170, subds. 1–3).

The allegation in an application by a corporation, which is sole defendant, for a change of venue, that local prejudice exists against its president, preventing a fair trial, cannot be referred to Rev. St. 1925, art. 2170, subds. 1 and 2, though it is referable to subdivision 3.

4. Venue ⬉58—Bare allegation that corporation cannot have fair trial because of prejudice against president is conclusion and demurrable.

The statement, in a corporation's application for change of venue, that it cannot have a

(296 S.W.)

fair trial because of local prejudice against its president, is a mere conclusion of the pleader, and, where unsupported by allegations of fact, is demurrable.

**5. Pleading ☞214(5)—General demurrer does not admit truth of legal conclusions.**

A general demurrer does not admit the truth of legal conclusions in the pleading demurred to.

**6. Pleading ☞192(3)—Pleading stating only conclusions, not facts, is demurrable.**

A pleading which states only conclusions rather than the facts from which they are drawn is subject to demurrer.

**7. Pleading ☞34(3)—Courts will not resort to inference to give pleading undeserved interpretation.**

The courts will not deduce one fact from the existence of another or resort to argument or inference in order to give a pleading an interpretation which it should not receive.

**8. Pleading ☞34(3)—Rule requiring court on demurrer to indulge intendments deducible from facts pleaded does not apply to pleading of conclusions only.**

The general rule that against a general demurrer every reasonable intendment deducible from the facts pleaded must be indulged in the pleading's favor does not apply, where no facts, but conclusions only, are pleaded.

**9. Venue ☞50—General prejudice among great body of people is not ground for change of venue within statute (Rev. St. 1925, art. 2170).**

Prejudice of a general nature, existing among the great body of the people, is not a ground for change of venue within Rev. St. 1925, art. 2170.

**10. Deeds ☞190—Grantor's petition to rescind deed and recover damages on ground of then unsound mental condition and answer held to present issue whether act was impelled by insane delusion.**

Petition for rescission of a deed and damages for the redemption of property thereby conveyed on the ground of plaintiff's then diseased mental condition compelling his action, and defendant's answer denying insanity, *held* to present issue whether plaintiff was impelled by an insane delusion.

**11. Deeds ☞78—Evidence of intermittent insanity presented question for jury whether grantor was impelled by insane delusion in executing deed.**

Evidence of intermittent insanity presented for jury the issue whether plaintiff, seeking rescission of deed executed by him, was at the time of the deed impelled by an insane delusion.

**12. Deeds ☞76—Deed induced by insane delusion is voidable whether or not grantee had actual or constructive notice of incompetency.**

The deed by the grantor, executed under and because of an insane delusion, is voidable at his option, whether or not the grantee had actual or constructive notice of his then diseased mental condition.

**13. Deeds ☞203—Testimony of delusion in similar transaction ten years before execution of deed sought to be canceled held admissible, notwithstanding remoteness.**

Testimony that in a similar business transaction, ten years before the conveyance in suit, plaintiff acted under a similar delusion, *held* admissible in his suit to cancel a deed on the ground that he executed it because of an insane delusion; the remoteness affecting, not the admissibility, but the weight of the evidence.

**14. Deeds ☞203—No general time limit can be fixed to determine whether evidence of prior insanity is inadmissible for remoteness in suit to cancel deed.**

No general time limit can be fixed in determining whether evidence of prior insanity is too remote to be relevant in action to cancel the plaintiff's deed on the ground of incompetency.

**15. Witnesses ☞373—Direct question whether witness expected to sue party for whom he testified held improper without predicate for impeachment.**

A direct question whether a witness was not expecting to file suit against the party on whose behalf he was testifying, in order to show his bias, is improper, where no predicate for such impeachment has been laid.

**16. Appeal and error ☞1056(1)—Error, if any, in excluding testimony whether witness intended to sue party for whom he testified, held harmless.**

Error, if any, in excluding the answer to a question whether a witness expected to file suit against the party for whom he was testifying *held* harmless, where no injury was shown.

**17. Appeal and error ☞758(3)—Excluding answer to apparently irrelevant question will not be held error, where brief fails to disclose materiality.**

Excluding the answer to a question of no apparent relevancy will not be *held* error, where the materiality of the question is not disclosed by the appellant's brief.

**18. Evidence ☞107—Evidence of witness' tax rendition January 1st held irrelevant to his testimony of cash on hand September 2d preceding, since money might have been invested.**

Evidence of tax rendition, made on January 1st by plaintiff grantor seeking to cancel deed for insanity, *held* irrelevant, though plaintiff testified of cash on hand September 2d preceding, since the money might have been invested in the interim.

Error from District Court, Grayson County; Silas Hare, Judge.

Suit by J. P. McMillan and another against the Ferguson Seed Farms, Inc. Judgment for plaintiffs, and the defendant brings error. Affirmed.

Thos. S. Henderson, of Cameron, Owsley & Owsley, of Denton, F. L. Henderson, of Bryan, and Jesse F. Holt, of Sherman, for plaintiff in error.

Freeman, McReynolds & Hay, of Sherman, for defendants in error.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HALL, C. J. The defendant in error Mc-Millan filed this suit against the plaintiff in error, alleging that on September 22, 1924, he was the owner in fee simple of certain gin property described in his petition, which he had constructed at a cost of $65,000; that on said date he and his wife by warranty deed conveyed said property to plaintiff in error, which for convenience will be hereinafter referred to as defendant, for a total consideration of $25,000, evidenced by five notes for $5,000 each, one note payable January 1, 1925, and the remaining notes payable one each year to January, 1929; that said notes were secured by deed of trust on the property conveyed; that the defendant, Ferguson Seed Farms, Inc., by deed of trust dated September 1, 1924, but in fact acknowledged and recorded September 15, 1924, had conveyed said gin property and other property, in trust, to Jessie F. Holt and J. J. Eubank, as trustees, for the purpose of securing the payment of bonds, aggregating $75,000, payable September 1, 1934, but that none of said bonds had been transferred or negotiated by said defendant; that, at the time of the execution and delivery of the aforesaid deed to defendant, plaintiff was of unsound mind and was totally lacking in mental capacity to execute a valid deed, conveying said property; that he was caused and impelled by said diseased mental condition to execute said deed; that at the time of its execution the property was of the reasonable value of $65,-000, and the consideration which defendant agreed to pay for same was wholly inadequate and was not the fair value of said property, which facts were well known to the defendant; that the instrument so executed by plaintiff to the defendant, was void, by reason of the facts alleged, and did not operate to convey to defendant any title to said property; that, if mistaken in alleging that said deed was void, then plaintiff shows that at the time said instrument was executed, he was of unsound mind and wholly lacking in mental capacity to execute a valid conveyance of said property, and was impelled by a diseased mental condition, and that said instrument was and is voidable at his instance, and that, since the execution and delivery of said instrument, he has become of sound mind, and has made demand on defendant for the rescission and cancellation of said instrument, and has tendered to the defendant the notes executed in lieu of the purchase money for said property, and here now renews his tender and offer to rescind and cancel. The prayer is that the deed executed by him and his wife and also the notes and deed of trust executed by the defendant, Ferguson Seed Farms, Inc., be canceled and annulled. He prayed for judgment for title and possession of the property, and for removal of the cloud on his title, for damages and costs of suit.

The defendant answered by general demurrer, general denial, and specially denied that plaintiff was of unsound mind at the time the deed was executed, and further alleged that defendant had bought the land in good faith, and, if plaintiff was of unsound mind and afflicted with any mental trouble, which is denied, it did not know it, and that defendant was ready, able, and willing at all times to perform its part of the contract. Defendant also filed an application to change the venue of the case from Grayson county, which was overruled.

The controversy was submitted to a jury upon special issues. The substance of the findings being as follows:

"No. 1. The plaintiff McMillan was impelled by an insane delusion to execute the deed on September 2, 1924, by which he conveyed the property in question to the defendant."

"No. 3. The fair, reasonable rental value of the property from September 3, 1924, to April 13, 1925, was $5,000."

"No. 4. The property had no rental value from April 13, 1925, to the date of the trial."

Based upon this verdict, the court rendered judgment divesting all of the defendants, including the two trustees, of all title to the property, and rescinding and canceling the conveyance above mentioned, and the notes. Judgment was further rendered in McMillan's favor for damages in the sum of $5,000, with interest from the date of the judgment.

The first contentions relate to the action of the court upon the application for change of venue. The application is sworn to by A. M. Ferguson, as president of the defendant company, and the material recitals are as follows:

"That there exists, in Grayson county, Tex., so great a prejudice against this defendant and its president, A. M. Ferguson, that it cannot obtain a fair and impartial trial in said county.

"That there is a combination against this defendant, instigated by influential persons, by reason of which it cannot expect a fair and impartial trial of this cause in said county."

The plaintiff urged the following demurrer to the application:

"He especially excepts to that part of said application in which it is alleged that so great a prejudice against the president of the defendant, Ferguson Seed Farms, Inc., viz. A. M. Ferguson, exists in Grayson county that defendant, Ferguson Seed Farms, Inc., cannot obtain a fair and impartial trial in Grayson county, because the statute does not warrant changing the venue of a civil case because of any prejudice against the president or other officer of the defendant corporation, and the said allegations constitute no ground for the change of venue prayed for."

The court sustained the demurrer and heard testimony only upon the issues of local prejudice against the defendant company and the existence of a combination instigated by influential persons against the defendant.

The defendant's first proposition is that

prejudice against A. M. Ferguson, president of the defendant corporation, to such an extent that defendant could not get a fair trial, is in law admitted by the demurrer, which was sustained by the court, and is sufficient statutory ground for granting the application, and the court erred in sustaining said exception and limiting the inquiry to prejudice against the defendant only. It will be observed that the application is substantially in the words of the first two subdivisions of R. S. art. 2170, with the exception that prejudice is alleged to exist against defendant's president, A. M. Ferguson. This part of the application, we think, should be considered as falling under subdivision 3 of said article, which reads: "For other sufficient cause, to be determined by the court."

[1] It appears from the record that, after sustaining the special exception, which eliminated the issue of proof of prejudice against A. M. Ferguson, the court heard testimony upon the other two issues, and upon such hearing overruled the application. This evidence is not before us, and in support of the judgment, we must presume that the court has ruled correctly as to those issues.

[2-6] An application for change of venue, which follows the language of the statutes substantially, in setting out the first two grounds, may be sufficient, but, as to the third ground of the statute, we think the facts relied upon as showing a "sufficient cause" should be fully set out in the application, since their sufficiency is to be determined by the court. This is the general rule in other jurisdictions. 40 Cyc. 153, 154. In a suit against a corporation alone, the allegation in its application for change of venue that local prejudice exists against its president, cannot by any reasonable construction be made referable to the first two subdivisions of said article, because the president is not a party to the suit. A corporation and its officials are separate entities. If prejudice against him is such as to entitle the corporation to the change, there should be some facts alleged under subdivision 3, which will tend to show the court why and to what extent prejudice against him personally will jeopardize the rights of the defendant. This is what was done by the movant in Trimble v. Borroughs, 41 Tex. Civ. App. 554, 95 S. W. 614, cited by defendant. The statement in the application that the defendant cannot get a fair trial in Grayson county, because of local prejudice against its president, A. M. Ferguson, is simply a conclusion of the pleader, and was subject, we think, to the demurrer which the court sustained, and which we construe to be a general demurrer to that particular allegation. A general demurrer does not admit the truth of legal conclusions found in the pleading demurred to (Sanders State Bank v. Hawkins [Tex. Civ. App.] 142 S. W. 84), and, where conclusions, rather than the facts from which they may be drawn, are pleaded, the construction must be against the sufficiency of the plea (Berry v. American Rio Grande Land & Irrigation Co. [Tex. Civ. App.] 236 S. W. 550).

[7-9] The courts will not deduce one fact from the existence of another or resort to argument or inference in order to give a pleading an interpretation which it should not receive. Texas & Pacific Ry. v. Bayliss, 62 Tex. 570. Of course, the general rule is that, as against a general demurrer, every reasonable intendment deducible from the facts pleaded must be indulged by the court in favor of the pleading, but in this instance no facts whatever are pleaded. It is not alleged that A. M. Ferguson was the active president or manager of his company, or that he negotiated the trade, nor, as was suggested in oral argument, was it alleged that he was a member of an unpopular family. We are inclined to the opinion that such an allegation would not have strengthened the pleading, since it is held that prejudice of a general nature existing among the great body of the people is not ground for the change. Freeman v. Cleary (Tex. Civ. App.) 136 S. W. 521.

[10, 11] The defendant next insists that the finding of the jury that plaintiff was impelled to execute the deed by an insane delusion is not supported, either by the pleadings or the evidence. The plaintiff pleaded that, at the time of the execution and delivery of the deed, to defendant, he—

"was of unsound mind and was totally lacking in the mental capacity to execute a valid deed conveying said property; that he was caused and impelled by such diseased mental condition to execute said deed. * * * If mistaken in alleging that said instrument was void, then plaintiff says that at the time said instrument was executed he was of unsound mind as herein alleged, and wholly lacking in mental capacity to execute a valid deed of conveyance of said property, and was impelled to execute the same by a diseased mental condition."

The defendant specially denied "that plaintiff was insane or was of unsound mind, or that he was under any mental trouble at the time he executed said deed." We think these pleadings are sufficient, and overrule this contention. We are further of the opinion that this finding is supported by a preponderance of the testimony. A host of witnesses testified upon this issue, among them several physicians and experts. The issue was sharply contested, and the evidence relating to it is voluminous, but, after a careful review of all of the testimony introduced by both sides, we are convinced that it is sufficient to show the plaintiff was insane at the time he executed the deed and that he executed it as the result of an insane delusion. The testimony shows that his insanity was of the recurrent or intermittent type, and he disposed of the gin property while under the delusion that, if he retained it, it

would result in his insolvency. The true test of the presence or absence of insanity has been stated to be the presence or absence of delusion; insanity being always marked by delusions, which indicate an abnormal condition of the mind, and their absence being characteristic of a sound mind. Hatfield's Case, 27 How. St. Tr. 1282; Macklin's Case, 3 Couper, 257; Commonwealth v. Meredith, 17 Phila. (Pa.) 90; Boren v. State, 32 Tex. Cr. R. 637, 25 S. W. 775; Wilcox v. State, 94 Tenn. 106, 28 S. W. 312; State v. Wilmer, 40 Wis. 304; 32 C. J. 604–606.

[12] The next proposition to be considered is that, before the deed can be set aside, upon the ground that it was executed under an insane delusion, it must be shown that the defendant had either actual or constructive knowledge thereof, and that the court erred in refusing to give two special issues requested by the defendant, inquiring whether defendant had either actual or constructive knowledge of plaintiff's mental condition at the time it accepted the deed.

The record shows that plaintiff had tendered into court for cancellation the notes which the defendant executed for the property in lieu of the purchase money, and offers to restore the status quo. We think the rule is established in this state that, if plaintiff was insane and executed the deed while under the delusion shown, it is voidable at plaintiff's option, whether or not the defendant had actual or constructive notice of such diseased or unsound mental condition. Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115; Searcy v. Hunter, 81 Tex. 644, 17 S. W. 372, 26 Am. St. Rep. 837; Mitchell v. Inman (Tex. Civ. App.) 156 S. W. 290; Lewis v. Blount (Tex. Civ. App.) 139 S. W. 7; Rowan v. Hodges (Tex. Civ. App.) 175 S. W. 847.

[13] Over the objection of the defendant, testimony was admitted from several witnesses to show that in 1914 the plaintiff had under construction a block of business buildings at Madill, Okl.; that when the buildings were nearing completion the plaintiff suffered a physical and mental collapse; and that, although he was worth approximately $200,000, and owed no debts except $20,000 balance due on the buildings, he conceived the idea that he was threatened with suits by the parties to whom he had leased the buildings and owed debts which he would be unable to pay, that he was going to die and his family would be left in poverty and destitution. He further conceived the idea that, in order to get relief from these threatening calamities, it was necessary for him to give this property away, and, over the protests of his physicians and members of his family and friends, he conveyed this property for a nominal consideration. Evidence showing these facts was objected to because it was irrelevant, immaterial, and remote, and was not sustained by the pleadings. In our opinion, the court did not err in admitting this testimony. According to the testimony of Dr. J. S. Turner, an eminent specialist in mental diseases, who testified as an expert, evidence of this transaction was necessary in order to form a correct opinion of plaintiff's condition at the time of the execution of the deed in question. The testimony of other physicians and witnesses showed that his mental condition was due to a physical and nervous breakdown, induced by overwork and anxiety concerning his business affairs, and this particular incident was necessary as a part of the history of his mental condition. Different alienists and experts have different names for the particular mental trouble which affected plaintiff at both times, although the delusion under which he was laboring was practically the same. It would appear from all of the testimony that when his physical health was good and the nervous tension or strain incident to the conduct of his business affairs was not extreme, there were no insane delusions such as afflicted him in 1914, and at the time of the execution of the deed to defendant. The fact that his trouble while at Madill was 10 years prior to the execution of the deed to the defendant we think is not so remote as to render it inadmissible.

In his work on Evidence (2d Ed.) vol. 1, § 233, Prof. Wigmore discusses the question of the admissibility of evidence of prior and subsequent insanity at considerable length. Citing and quoting from numerous cases in the notes, the author says:

"A condition of mental disease is always a more or less continuous one, either in latent tendency or in manifest operation. It is therefore proper, in order to ascertain the fact of its existence at a certain time, to consider its existence at a prior or subsequent time. * * * There seems to be no agreed definition of the limit of time within which such prior or subsequent condition is to be considered, and in the nature of things no definition is possible. The circumstances of each case must furnish the varying criterion and set determination of the trial judge ought to be allowed to control."

[14] He cited Sergeson v. Sealey, 2 Ark. 412, in which proof of insanity 8 years previous was admitted to show insanity at a given date. In Snow v. Benton, 28 Ill. 306, evidence showing insanity 10 or 12 years previous was admitted. In Staser v. Hogan, 120 Ind. 207, 21 N. E. 911, 22 N. E. 990, the court held it was proper to show the condition of the testator's mind at any time, and the Supreme Court of Massachusetts, in Howes v. Colburn, 165 Mass. 385, 43 N. E. 125, approved the trial court's limitation to a period from about 8 years before the execution of the will, to about 2½ years after. It would seem that the question is one of degree only. The further off the evidence is carried, the

weaker it may be, but it is still evidence and should be considered. As said in People v. Farrell, 31 Cal. 576, no general time limit can be fixed that will control in all cases.

When it was shown that, under the same conditions of health, and in connection with similar business transactions, in 1914, the plaintiff acted from the same delusion under which he acted in 1924, it occurs to us, when considered in the light of the testimony of Dr. Turner, and the other physicians who testified, that the evidence was admissible, although 10 years had intervened between the two transactions. We are sustained in this holding by Wigmore and by the following cases and others cited in the brief of appellant: In re Winch, 84 Neb. 251, 121 N. W. 117, 18 Ann. Cas. 903; Taylor v. McClintock, 87 Ark. 243, 112 S. W. 405; Mileham v. Montagne, 148 Iowa, 476, 125 N. W. 664; Knox v. Knox, 95 Ala. 495, 11 So. 125, 36 Am. St. Rep. 235; Jenkins v. Weston, 200 Mass. 488, 86 N. E. 955; Terry v. Buffington, 11 Ga. 337, 56 Am. Dec. 425; Odom v. State, 174 Ala. 4, 56 So. 913.

[15, 16] While the witness Markham was upon the stand, testifying for plaintiff, defendant's counsel asked him if it was not a fact that he was now complaining that A. M. Ferguson owed him a large amount of money, growing out of the operation of the gin, and that the attorneys representing plaintiff in this case were his attorneys in that claim, and if it was not a fact that he was expecting to file suit against Ferguson to recover upon his claim. The purpose of this testimony was to show the interest and bias of the witness. The question was objected to as not being a proper way to show his bias or prejudice, if he had any, and because a proper predicate had not been laid by asking the witness a direct question. We think the court correctly sustained the objection and excluded the testimony. Before a witness can be impeached by questions of this character, tending to show his bias or interest, a predicate for such impeachment must first be laid. G., C. & S. F. Ry. Co., v. Young (Tex. Civ. App.) 284 S. W. 664; G., H. & S. A. Ry. v. La Prelle, 22 Tex. Civ. App. 593, 55 S. W. 125; 40 Cyc. 2676. It would further appear that the defendant has not been prejudiced in any material way by the exclusion of this testimony. Since no injury is shown, the error, if any, is harmless.

[17] It appears that, while plaintiff's brother, J. H. McMillan, was on the stand testifying, and had stated that, after plaintiff sold his Madill property, he turned his attention to ginning and buying cotton. defendant propounded to him this question: "And you made a success of it?" The plaintiff objected to the question because it was irrelevant and immaterial. The court sustained the objection. The materiality of this question is not disclosed by the brief of appellant, and is not apparent to us.

[18] Plaintiff had testified that, at the time he made the sale of the gin to defendant, September 2, 1924, he had about $40,000 in cash deposited in several different banks, and, while upon the stand, defendant asked him: "Isn't it a fact that you did not render for taxes for 1925 a single cent of cash?" The court excluded this testimony as being irrelevant and immaterial.

It occurs to us that evidence as to the tax rendition of plaintiff for the year 1925, showing that he had no money on hand, or did not render for taxes any cash on hand, on the 1st day of January, 1925, would have no bearing whatever upon any material issue. He may have had $40,000 in various banks on September 2, 1924, and, since the evidence shows that he was a dealer in cotton, it is probable that this money may have all been invested in his business of buying cotton before January 1st. No effort was made to prove by direct testimony from any of the banks where he kept his deposits that he did not have $40,000 in cash on September 2d. The evidence shows that in November, 1924, he had recovered from his nervous and mental breakdown, had paid certain indebtedness, and the fact of his tax rendition showing the amount of money on hand on January 1, 1925, was without any probative force. The court did not err in not instructing a verdict for the defendant.

We find no reversible error in the record and the judgment is affirmed.